**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 19-361 (BAH) |
| JAMES HUTCHINGS, JR., | Chief Judge Beryl A. Howell |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant James Hutchings, Jr. is charged with a single count of conspiring, in violation of 18 U.S.C. § 371, with Kofi Appiah and others, from about September 4, 2018, through about December 19, 2018, to violate multiple provisions of 18 U.S.C. § 922, including (1) conspiring to sell or transfer firearms to out-of-state persons, in violation of § 922(a)(5), (2) conspiring to sell firearms as a dealer without a license, in violation of § 922(a)(1)(A), and (3) conspiring to sell to and receive firearms by a person previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of § 922(g)(1). Indictment at 1, ECF No. 1.[1] According to the government, "[t]he goal of the conspiracy was to obtain firearms from licensed firearms dealers in Georgia to transfer and transport these firearms to the District of Columbia and elsewhere, for the purpose of illegally reselling these firearms for profit to individuals otherwise unable to legally acquire firearms." *Id.* at 2.

At the trial against him scheduled for November 1, 2021, defendant seeks, pursuant to Federal Rules of Evidence 401 and 403, "to exclude evidence of drug trafficking and other misconduct by Linwood Thorne and others." Def.'s Mot. *in Limine* to Exclude Evidence

---

[1] Appiah has already been sentenced, on his plea of guilty to this conspiracy charge, on April 2, 2021, *see* Min. Entry (Apr. 2, 2021), and is currently incarcerated.

Regarding Linwood Thorne ("Def.'s Mot."), at 1, ECF No. 140.  Specifically, defendant seeks to exclude: (1) evidence of several controlled purchases of heroin by Omar Elbakkoush from Linwood Thorne, *id.*, and (2) "evidence about the December 19, 2018 search of Thorne's residence and all items—including narcotics—recovered from the search of Thorne's residence," *id.*

While not intending to introduce evidence of Elbakkoush's controlled purchases of heroin from Thorne, the government opposes defendant's motion to exclude evidence regarding the seizure of narcotics, firearms, and other items from Thorne's residence, contending that this evidence is both relevant and admissible.  Gov't's Opp'n Def.'s Mot. ("Gov't's Opp'n") at 11, ECF No. 136 (clarifying evidence regarding Thorne that the government intends to introduce).  For the reasons explained below, defendant's motion *in limine* is granted in part and denied in part.  Evidence regarding Elbakkoush's heroin transactions with Thorne is excluded, as conceded by the government, but evidence regarding the items seized from Thorne's residence may be admitted, with an appropriate limiting instruction.

## I.   BACKGROUND

The government's proffered factual background to this case is set out in *United States v. Appiah*, No. 19-cr-361 (BAH), 2020 WL 3469688 (D.D.C. June 25, 2020), and need not be elaborated here beyond the following summary.  On December 19, 2018, during execution of a search warrant at Thorne's residence at 4215 Foote Street, NE, Washington, D.C., law enforcement recovered almost 44 kilograms of heroin, some of which was laced with fentanyl, 50 pounds of marijuana, and six firearms.  *Id.* at *1.[2]  Law enforcement determined that three of

---

[2]  Thorne is currently facing narcotics trafficking and firearms charges in a separate case scheduled for trial on March 14, 2022, before this Court.  *See United States v. Thorne*, No. 18-cr-389 (BAH), 2020 WL 122985 (D.D.C. Jan. 10, 2020).

the recovered firearms—one Glock 43, 9mm pistol and two Glock 19, 9mm pistols—had been purchased by Appiah and an associate on September 4, 2018, and December 6, 2018, from a firearms dealer in Columbus, Georgia. *Id*.; *see also* Indictment at 3–5.

Subsequent investigation helped law enforcement uncover the connections among Appiah, Hutchings, and Thorne. Records of cell-cite data for Appiah's phone established that on December 7, 2018, the day after certain firearms later recovered at Thorne's Foote Street residence had been purchased, the phone traveled from Atlanta, Georgia to Arlington, Virginia and returned to Georgia two days later, on December 9, 2018. *Appiah*, 2020 WL 3469688 at *2. During this brief visit to the D.C. area, Appiah's phone connected to a cell tower in close proximity to both an auto-body shop owned by Thorne and another tower near Thorne's Foote Street residence. *Id*. Review of the contents of Appiah's phone turned up multiple images of firearms and text messages indicating that Appiah was engaged in the sale of firearms, and, most relevant to this case, the phone contained images of at least one of the firearms recovered from the Foote Street residence. *Id.* at *3.

Coordination between the law enforcement agents investigating Appiah and the agents investigating Thorne helped fill in missing links. Two weeks after execution of the search warrant at Thorne's Foote Street residence, agents surveilled a Baltimore apartment building where Thorne was believed to be hiding. The agents witnessed defendant leave the apartment building with another individual and get into a car, which the agents then pulled over to question both about Thorne's location. The individual with defendant confirmed that Thorne was in the apartment. Law enforcement then left defendant and the other individual, entered the apartment, and found Thorne with several cell phones, one of which was defendant's phone. *Id*.

A search of defendant's phone, on July 5, 2019, pursuant to a search warrant, uncovered evidence that defendant was the connection between Appiah and Thorne. Specifically, agents recovered text messages between Appiah and defendant apparently referring to the very guns later found in Thorne's Foote Street residence. *Id.* GPS data retrieved from defendant's phone further established the Appiah-Hutchings-Thorne connection. The evidence showed that on December 8, 2018, defendant's phone was in close proximity to Appiah's parents' residence in Temple Hills, Maryland, and on December 9, 2018, the phone was near Thorne's Foote Street residence. *Id.* at *4. On December 11, 2018, defendant texted Appiah that he was going to meet with an individual he called "big bro" in an hour or so, and, less than an hour later, defendant's phone was within blocks of Thorne's auto-body shop in Clinton, Maryland. *Id.* According to the government, the dots had been connected, and, on October 24, 2019, both Appiah and defendant were indicted for the firearm-trafficking conspiracy. Indictment at 1.

Having heard argument on defendant's pending motion at the pretrial conference held on October 1, 2021, this motion is now ripe for resolution.[3]

## II.   LEGAL STANDARD

The Supreme Court has recognized that, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Pretrial motions *in limine* help to ensure that, "[t]o the extent practicable," trials are

---

[3]   A number of pretrial motions in this case have previously been resolved, including (1) the government's motion for 404(b) evidence and 609 notice, ECF No. 47, *see Appiah*, 2020 WL 3469688; (2) defendant's motion to sever his trial from his co-defendant, Appiah, ECF No. 48, *see* Min. Order (Oct. 15, 2021); (3) defendant's motion to strike prejudicial surplusage from or, alternatively, to partially dismiss count one of the indictment, ECF No. 49, *see* Min. Entry (June 5, 2020); (4) defendant's motion to suppress evidence obtained from his phone that was seized during Thorne's arrest, ECF No. 50, *see* Min. Entry. (Oct. 15, 2020); and (5) defendant's motion *in limine* to exclude testimony regarding location data generated by Google and Apple, ECF No. 139, *see* Min. Order (Oct. 1, 2021).

conducted in a manner such that "inadmissible evidence is not suggested to the jury by any means." FED. R. EVID. 103(d). They also aid courts in administering proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination." FED. R. EVID. 102. Pretrial rulings like this one thus "may generally be the better practice, for [they] permit[] counsel to make . . . necessary strategic determinations" before the jurors are in their seats. *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).

## III.   DISCUSSION

Following clarification by the government of the evidence regarding Thorne that the government will seek to admit at trial, the parties' instant dispute is focused on whether evidence of the narcotics seized from Thorne's Foote Street residence is admissible under Federal Rule of Evidence 403. Defendant argues that this evidence, to the extent relevant, poses a risk of unfair prejudice that substantially outweighs the evidence's probative value. Def.'s Mot. at 2. The government, in contrast, contends that admission of this evidence is relevant and necessary to establishing the context for why Hutchings joined the conspiracy and that any unfair prejudice may be mitigated by an appropriate limiting instruction. Gov't's Opp'n at 12.

Following a review of the principles underlying the applicable Federal Rules of Evidence, the parties' arguments are addressed.

### A.   Applicable Legal Principles: Rules 401 and 403

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." FED. R. EVID. 401. While "[i]rrelevant evidence is not admissible," FED. R. EVID. 402, relevant evidence generally is. One exception to Rule 402's general rule of admissibility of relevant evidence is Rule 403, which provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  Notably, Rule 403 renders relevant evidence inadmissible only upon a showing that it presents a risk of "unfair prejudice," i.e. prejudice that is "compelling or unique," *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995) (quoting *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992)), or has "an undue tendency to suggest decision on an improper basis," *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting FED. R. EVID. 403, Advisory Committee's Note to 1972 Proposed Rules). Moreover, the danger of any potential unfair prejudice must substantially outweigh the evidence's probative value in order to exclude evidence under Rule 403.

In undertaking the 403 analysis, the district court must "take account of the full evidentiary context of the case as the court understands it when the ruling must be made." *Old Chief v. United States*, 519 U.S. 172, 182 (1997).  A calculation of the probative value and risk of prejudice is thus "affected by the scarcity or abundance of other evidence on the same point." *Id*. at 185 (quoting 22 C. WRIGHT & K. GRAHAM, FED. PRACTICE AND PROCEDURE § 5250, 546–47 (1978)).  That is, when there is "less risky alternative proof going to the same point," the probative value of evidence that presents a greater danger of unfair prejudice may be "discount[ed]." *Id*. at 183.  Given the trial court's familiarity with this full evidentiary context, district judges generally have "broad discretion to weigh the extent of potential prejudice against the probative force of relevant evidence." *Athridge v. Aetna Cas. & Sur. Co*., 604 F.3d 625, 633 (D.C. Cir. 2010) (quoting *Fredrick v. District of Columbia*, 254 F.3d 156, 159 (D.C. Cir. 2001)).

### B.    Evidence of the Drugs Seized from Thorne's Residence Is Admissible

Defendant argues "the mere fact that Thorne sold large quantities of narcotics would not help the government establish that (or explain why) Mr. Hutchings allegedly helped transport certain weapons to Thorne in December 2018."  Def.'s Mot. at 2.  Based on the premise that the

narcotics seized from Thorne's residence have limited relevance, defendant contends that the introduction of this evidence would be "overwhelmingly" prejudicial because "[t]he sheer quantity of heroin recovered from Thorne would cast a pall over any accused of associating with him in any capacity." *Id.* at 2–3.   Even if the quantities of narcotics were not mentioned, defendant contends that tying him to a drug trafficking operation "presents a substantial risk that a jury would focus on perceived culpability for [associating with] a drug trafficking organization . . . rather than on the relevant issues at trial pertaining to defendant's [charged] transactions and dealings." *Id.* at 3 (alterations and omission in original) (quoting *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 166 (D.D.C. 2020)).   These arguments fall short of showing that the admission of the narcotics evidence presents such a substantial risk of unfair prejudice to outweigh any probative value.

Defendant primarily relies on this Court's decision in *Oseguera Gonzalez*, but that case is inapposite.  In *Oseguera Gonzalez*, the defendant was charged, in violation of 21 U.S.C. §§ 1904, 1906, with engaging in transactions with persons and entities designated by the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC") as Specially Designated Narcotics Traffickers.  507 F. Supp. 3d at 145.  The government's motion to admit at trial evidence that the defendant kept ledgers of narcotics trafficking activities for a designated drug cartel was denied because the proffered evidence (1) occurred a year before the OFAC designations, and (2) "does little to show that defendant knew that the businesses had been designated and blocked by OFAC," *id.* at 165, and thus had "only minimal probative value," *id.* at 166.  Here, by contrast, defendant's connections to Thorne, who was prohibited from possessing firearms due his prior felony conviction, are clearly relevant and probative to show the means, purpose, execution, and scope of the charged firearm-trafficking conspiracy and

defendant's involvement and role in that conspiracy.  *See United States v. Machado-Erazo*, 901 F.3d 326, 334 (D.C. Cir. 2018) ("In conspiracy prosecutions, the prosecution is 'usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged . . . and to help explain to the jury how the illegal relationship between the participants in the crime developed.'" (internal quotation marks omitted) (omission in original) (quoting *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000))).

The government alleges that the goal of the charged conspiracy was to obtain firearms and transport them to D.C. for the purpose of illegally reselling the firearms to individuals otherwise unable legally to acquire and possess firearms.  Indictment at 2.  Thorne, as a previously convicted felon, fell into the category of persons who are prohibited from legally acquiring firearms and therefore conspired with defendant and his other co-conspirators to receive firearms unlawfully.  Gov't Mot. Regarding Rule 404(b) and 609 ("Gov't Mot.") at 2, ECF No. 47.  Evidence of Thorne's narcotics trafficking helps to clarify why the illegal relationship between defendant, Thorne, and Appiah developed.  Drug dealers use their firearms to protect their illegal contraband and, here, Thorne, as a prohibited person, was unable legally to acquire firearms to protect his large heroin and marijuana stashes.  Thorne's obvious need explains the connection between defendant and Thorne and why they were involved in this firearm conspiracy together.  Indeed, firearms purchased by Appiah, or his agent, in Georgia, were found with the drugs and drug paraphernalia seized at Thorne's Foote Street residence, supporting in a concrete way the reason that Thorne needed firearms and explaining the nature of the firearm transfers from defendant to Thorne.  *See United States v. Green*, No. 17-CR-105, 2018 WL 934620, at *3 (W.D. La. Feb. 15, 2018) (collecting cases establishing that the recovery of drugs and firearms in the same location constitutes relevant admissible evidence to prove in

felon-in-possession cases that the felon possessed firearms to protect their drug-trafficking business).  Thus, in contrast to the circumstances in *Oseguera Gonzalez*, evidence of Thorne's narcotics trafficking serves as an important building block in constructing the government's theory for why defendant, Thorne, and Appiah conspired together in the firearm-trafficking conspiracy.

Furthermore, the specific quantity and type of the narcotics recovered from Thorne's residence is also critical to explain what happened in this case and how the evidence led directly to defendant.  As the government correctly explains, the narcotics evidence "[is] inextricably intertwined with the evidence that this Court has already found to be admissible," namely the text messages between Hutchings and his fiancée, India Powell, concerning a debt Hutchings owed Thorne and the enormous pressure on him to get out from under it.  Gov't Opp'n at 12; *see Appiah*, 2020 WL 3469688 at *8.  This Court previously determined that these text messages constitute "powerful evidence of the connection between Hutchings and Thorne and help explain why Hutchings was providing guns to Thorne."  *Appiah*, 2020 WL 3469688 at *8.

In turn, the large amount of drugs seized at Thorne's residence add context to defendant and his girlfriend's expressed fears about Thorne.  Defendant's communications with Powell are replete with reference to the danger posed by Thorne and the importance defendant placed on repaying a debt to Thorne.  *See e.g.*, Gov't Mot. Ex. B at 36, ECF No. 47-2 (showing that Powell's phone received a message from a number associated with defendant saying "[M]y plans are just to try pay Unc off eventually and leave others alone");[4] *id.* at 21 (showing that Powell's phone received a message from a number associated with defendant saying that defendant "owed

---

[4]     The government has previously explained that "Unc" is a nickname used by Powell and defendant for Thorne.  *Appiah*, 2020 WL 3469688 at *4.

a important person $30,000");[5] *id.* at 1–11 (detailing a series of text messages between defendant

and Powell concerning their fears about Thorne or his associate attacking defendant and his

family and defendant's concern that Thorne might believe defendant was "trying to set him up").

The government's plan to introduce evidence regarding the substantial and various types of

narcotics that were seized alongside the firearms adds context to these fears and conversations.

In short, the narcotics evidence is clearly relevant to the conspiracy and helps support the

government's theory that serious fears and pressures played a role in motivating defendant to

deliver firearms to Thorne.

Having established the relevance and probative value of the evidence, the next

consideration is whether admission of this evidence presents a risk of *unfair* prejudice that

*substantially* outweighs its probative value.  Three factors weigh heavily in finding that this Rule

403 analysis allows admission of the evidence.  First, in a case like this, where the government

must rely largely on circumstantial evidence, *see* Gov't's Mot. at 42, evidence that helps

establish defendant and the alleged co-conspirators' motivation to enter into the conspiracy is

particularly probative.  *See United States v. Wheeler*, --- F. App'x ----, No. 16-3780, 2021 WL

4129731, at *10 (3d Cir. Sept. 10, 2021) ("Because conspiracies, by their very nature, are

secretive, the prosecution can make its case based entirely on circumstantial evidence: 'A case

can be built against the defendant grain-by-grain until the scale finally tips.'" (quoting *United*

*States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc))).  "[N]o witness will

be able to directly state that they observed Hutchings with the firearms acquired by Appiah or

that they watched him facilitate the transfer of firearms to Thorne."  Gov't's Mot. at 42.  The

narcotics evidence and evidence about the underlying circumstances surrounding law

_____

[5]       The government proffers that the evidence will show that the "30,000" mentioned by defendant is his debt
owed to Thorne.  *Id.*

enforcement's investigations of defendant and Thorne provide critical connections between the two individuals to establish that defendant engaged in the transfer of firearms to a prohibited person.  The probative value of such evidence establishing connections between the co-conspirators and their motive to join together is high.  *See United States v. Thorne*, No. 18-cr-389 (BAH), 2020 WL 122985, at *19 (D.D.C. Jan. 10, 2020) (noting that the probative value of evidence demonstrating motive, knowledge, and intent increases when the government's case is circumstantial and "not without holes" (quoting *United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007)).

Second, the nature of the charged conspiracy undercuts defendant's concern that evidence of the drug trafficking will unfairly prejudice him because the jury will focus on his association with a drug trafficker rather than issues relevant to the charged conspiracy.  As discussed earlier, the goal of the conspiracy was to transfer firearms to persons otherwise prohibited from legally purchasing them.  Thus, part of the government's case will be evidence that Thorne qualified as a prohibited person due to his prior felony drug convictions,  Rough Transcript of Hearing (Oct. 1, 2021) at 53, and evidence that defendant associated with a convicted drug trafficker will already be before the jury.  *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (explaining that "all probative evidence is by its very nature prejudicial").  Further evidence confirming Thorne's narcotics-trafficking background does not create an excessive degree of unfair prejudice given that the background will already be introduced and the high probative value attached to the narcotics evidence in establishing the contours of the conspiracy.

Finally, as the government aptly notes, to the extent any risk of unfair prejudice exists, this risk may be mitigated through the use of a limiting instruction to the effect that defendant is not charged in this case with narcotics trafficking.  *See United States v. Bell*, 795 F.3d 88, 100

11

(D.C. Cir. 2015) (noting that "limiting instructions" serve "to mitigate the danger of undue prejudice or improper inferences").

Thus, the potential risk of unfair prejudice from evidence that Thorne's residence contained a large quantity of heroin and marijuana does not "substantially" outweigh the evidence's probative value since firearms involved in the conspiracy were recovered at the same time and defendant's association and relationship with Thorne, whose status as a prohibited person will be established, are key to proving the scope, nature, means, and purpose of the charged conspiracy.  Accordingly, Rule 403 does not bar admission of the types and quantity of the narcotics seized from Thorne's residence.

## IV.    CONCLUSION & ORDER

For the foregoing reasons, upon consideration of the defendant's Motion *in Limine* to Exclude Evidence Regarding Linwood Thorne, ECF No. 140, the memoranda in support of and opposition to this motion, the arguments advanced at the hearing held on October 1, 2021, and the entirety of the underlying record, it is hereby

**ORDERED** that defendant's motion is GRANTED IN PART and DENIED IN PART. Specifically, the government may introduce evidence about the execution of the search warrant on December 19, 2018, at Linwood Thorne's Foote Street residence and the seizure of narcotics, including the types and amounts, and firearms.  Evidence of Linwood Thorne's narcotics transactions with Omar Elbakkoush is excluded.

**SO ORDERED.**

Date:  October 6, 2021

_____
BERYL A. HOWELL
Chief Judge